IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 87447-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| CLAUDIO E. GREEN-HERNANDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — The State charged Claudio Green-Hernandez with felony driving under the influence (DUI), violation of ignition interlock, driving while license suspended/revoked in the first degree, and reckless driving. The defense's expert witness testified that Green-Hernandez's symptoms may have stemmed from his diabetes, and the symptoms could have affected Green-Hernandez's driving and performance in the field sobriety tests. The jury found Green-Hernandez guilty on all counts. Green-Hernandez appeals, asserting prosecutorial misconduct and ineffective assistance of counsel. Finding no error, we affirm.

FACTS

Background

In December 2023, Trooper Padilla observed Green-Hernandez driving 20 miles per hour over the speed limit on Interstate 90. Padilla initiated a traffic stop, during which he observed an open container in the center console, Green-

Hernandez's eyes were bloodshot and watery, and he smelled an odor of intoxicants on Green-Hernandez's breath. Padilla asked Green-Hernandez if "anything prevent[ed] him from walking in a straight line or bouncing on one foot." Green-Hernandez informed Padilla that he had diabetes and high blood sugar. Padilla conducted three voluntary field sobriety tests. Padilla observed four out of six clues in the horizontal gaze nystagmus (HGN) test; four out of eight clues in the walk-and-turn test; and three out of four clues on the one-leg-stand test.

Green-Hernandez was later charged with felony DUI, violation of ignition interlock, driving while license suspended/revoked in the first degree, and reckless driving.

<u>Expert Witness Testimony</u>

Green-Hernandez's trial began in July 2024. During direct examination, Dr. Nicole Chicoine,[1] the defense's expert witness, testified that she is a medical legal consultant. Pertaining to Green-Hernandez's case, Dr. Chicoine testified that she reviewed his King County jail medical records, Harborview emergency department medical records, and police videos. Dr. Chicoine did not physically examine Green-Hernandez.

In reviewing Green-Hernandez's medical records, Dr. Chicoine testified that his blood sugar levels were 436 and 427, which she classified as a "pretty high level." Dr. Chicoine also testified that Green-Hernandez had endorsed

---

[1] Dr. Chicoine's primary job is an emergency medicine physician and clinical instructor at the University of Washington Department of Emergency Medicine. She testified that she treats patients with diabetes frequently, and it was common for her to treat patients with high blood sugar.

concerns for polyneuropathy, or damage to his nerves.[2]  Symptoms of neuropathy include numbness, tingling, and pain.  Dr. Chicoine explained that these symptoms can impact a person's feeling or movement in their hands and feet, the nerve damage may cause a person "not feel that they're actually on the ground or something soft or something hard."  Dr. Chicoine detailed that diabetics with bad polyneuropathy have difficulties with balances and coordination.  Based on her medical expertise, Dr. Chicoine testified that neuropathy can affect a person's ability to perform the walk-and-turn test and the one-leg-stand field sobriety tests.[3]

Additionally, Dr. Chicoine testified that hyperglycemia[4] can negatively affect a person's attention to detail, memory, and ability to perform other cognitive tasks.  Dr. Chicoine concluded that it was possible that hyperglycemia affected Green-Hernandez's cognitive abilities while he was driving and completing the field sobriety tests.  Furthermore, if a person's blood sugar gets high enough, Dr. Chicoine stated, that they can experience diabetic ketoacidosis (DKA).[5]  DKA symptoms include dehydration, vomiting, altered mental status,

---

[2]  Dr. Chicoine further explained that "when someone with diabetes has uncontrolled glucose over [a] extended [] period of time, you can have damage throughout your whole body."  Dr. Chicoine testified that neuropathy can be caused by diabetes.

[3]  Dr. Chicoine testified, "[i]f you don't have the ability to feel, it's sometimes difficult for you to understand where your body is in relation to your environment, and it can affect your balance, it can affect your coordination.  And if your motor neurons are affected, it also can cause weakness, which, in turn, can also cause instability and lack of coordination."

[4]  Hyperglycemia is high glucose levels.

[5]  Diabetic ketoacidosis is diagnosed by a high glucose level, acid in one's blood, and presence of ketones.

3

and potentially losing consciousness. Although the hospital did not conduct a test for DKA, Dr. Chicoine noted that Green-Hernandez experienced two out of the three symptoms.[6] Dr. Chicoine determined that it was possible that Green-Hernandez experienced DKA. Ultimately, in reviewing Green-Hernandez's medical records and other evidence, Dr. Chicoine concluded that Green-Hernandez's hyperglycemia, retinopathy,[7] and polyneuropathy may have affected his performance in driving and field sobriety tests.

On cross-examination, the prosecutor asked Dr. Chicoine if she was being paid $500 for her testimony, and she replied, yes. The prosecutor then asked if alcohol could cause an altered mental state, Dr. Chicoine answered, yes. The prosecutor asked if alcohol could cause neuropathy and Dr. Chicoine stated, "I presume like extensive alcohol usage." Later, the prosecutor asked Dr. Chicoine, "you would agree that all the clues that were seen on the walk-and-turn and the one-leg stand, those are all consistent for alcohol impairment as well, correct?" Dr. Chicoine replied, yes.

---

[6] The three markers of DKA are high blood sugar, presence of ketones, and blood pH. Green-Hernandez exhibited high blood sugar and presence of ketones. His blood pH was unknown.

[7] Retinopathy is any of various noninflammatory disorders of the retina including some that cause blindness. *Merriam-Webster*, https://www.merriam-webster.com/dictionary/retinopathy (last visited June 24, 2026). Dr. Chicoine testified that Green-Hernandez experienced blurry vision at the hospital.

Prosecutor's Closing and Rebuttal Closing Argument

In his closing argument, the prosecutor stated that he would talk about "the law and how it applies to the facts of this case." The prosecutor then explained the burden of proof,

> is beyond a reasonable doubt.
>
> . . .
>
> It is a doubt that would exist in the mind of a reasonable person. It is based upon the evidence or the lack of evidence in this case. It is not speculative or made-up doubt. It's based on something that you would have seen or heard in court.

The prosecutor went on to describe certain evidence,

> As to what would be an unreasonable doubt in this case, it would be that the Defendant's diabetes caused the signs of alcohol impairment that were observed. Dr. Chicoine concluded that the Defendant had neuropathy. That was based upon a note in his medical records that he had decreased sensation to light touch in his toes on December 27[th]. And, therefore, she concluded that he would not be able to properly do the walk-and-turn and one-leg stand of the field sobriety tests. This is an unreasonable doubt in light of all the medical records.

The prosecutor then stated, "[a]nother unreasonable doubt is that Mr. Green Hernandez's high blood sugar would cause the signs of impairment that were observed in this case." The defense did not object to these statements in the closing argument.

Later, in the State's rebuttal argument, the prosecutor discussed Dr. Chicoine's testimony. The prosecutor stated,

> And so [Dr. Chicoine] is making $500 an hour. And in the jury instructions, you can consider whether someone has a personal interest that might affect their opinion in a case. Wouldn't you want to know that someone is being paid at an hourly rate to answer the question that's being asked by Defense?

5

And the critical thing is you can see exactly what she came up with. She answered the question that Defense asked her that she was hired to ask. And how did she do that? She manipulated the medical records that were read to you.

The defense did not object to this statement. Then, the prosecutor discussed Dr. Chicoine's testimony about DKA:

Now let's talk about the DKA or HHS.[8] And this is exactly when you should realize that this is a hired doctor who is providing the opinion that she wants to provide. Because we have medical records from Harborview indicating that a doctor, one of her own colleagues, is saying he was reassured that he does not show symptoms indicating DKA or HHS.

The defense did not object.

The prosecutor later emphasized Dr. Chicoine's testimony that Green-Hernandez exhibited signs of significant neuropathy. The prosecutor asserted,

This is not a reasonable doubt. It's important that the expert was being paid because she came to a conclusion that is not based upon the medical records. She answered a question for her client, and you should not take her word based on the evidence that you have been presented. Because you get to consider the totality of the picture, right? You get to consider everything as it is.

The defense did not object. After closing arguments, the case was sent to the jury for deliberation.

Green-Hernandez was found guilty of all counts and sentenced to 29 months. Green-Hernandez appeals.

ANALYSIS

Green-Hernandez asserts that the State committed prosecutor misconduct when the prosecutor (1) expressed his personal opinion about the evidence and

---

[8] HHS is the abbreviation for hyperosmolar hyperglycemic state.

6

the credibility of the defense's exert witness, (2) shifted the burden of proof to the defense, and (3) impugned the defense counsel.

<u>Legal Principles</u>

We review claims of prosecutor misconduct under an abuse of discretion standard. *State v. Brett*, 126 Wn.2d 136, 174, 892 P.2d 29 (1995).

In a criminal trial, defendants have the right to an impartial jury under the United States and Washington State Constitutions. U.S. CONST. amend. VI; U.S. CONST. amend. XIV; WASH. CONST. art. I, 3; WASH. CONST. art. I, 22. Prosecutors are quasi-judicial officers and representatives of the State. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). Thus, "a prosecutor owes a duty to a defendant to see that their rights to a constitutionally fair trial are not violated." *Zamora*, 199 Wn.2d 698 at 708. As a result, prosecutor misconduct claims directly implicate a defendant's constitutional right to a fair trial. *Zamora*, 199 Wn.2d 698 at 708.

To prevail on this claim, a defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 453, 442, 258 P.3d 43 (2011). We evaluate the prosecutor's conduct " 'in the context of the entire record and the circumstances at trial.' " *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (plurality opinion) (quoting State v Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). A statement is prejudicial if it "had a substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

7

After the defense establishes that a statement was improper, there are two standards for determining if the defendant was prejudiced. If the defendant objected to the appealed statement during trial, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Emery*, 174 Wn.2d at 760. If the defendant did not object to the statement during trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

### Prosecutor's Expression of Personal Opinion

In closing arguments, prosecutors have wide latitude to draw reasonable inferences from the evidence and to express such inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). Although prosecutors have wide latitude, they "may not make statements that are unsupported by the record and prejudice the defendant." *State v. Jones*, 71 Wn. App. 798, 808, 863 P.2d 85 (1993). We review the appealed comments in the context of the totality of the argument. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). This court will find that a prosecutor's comments are prejudicial error when "it is clear and unmistakable that counsel is not arguing an inference from the

8

evidence, but is expressing a personal opinion." *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983).

    a. Unreasonable Doubt

    First, Green-Hernandez asserts that the State committed prosecutor misconduct when it stated that unreasonable doubt existed about some evidence presented at trial. After the prosecutor stated the burden of proof, he described several pieces of evidence as *unreasonable doubt*:

> As to what would be an unreasonable doubt in this case, it would be that the Defendant's diabetes caused the signs of alcohol impairment that were observed.
>
> . . . .
>
> And, therefore, [Dr. Chicoine] concluded that [Green-Hernandez] would not be able to properly do the walk-and-turn and one-leg stand of the field sobriety tests. This is an unreasonable doubt in light of all of the medical records.
>
> . . . .
>
> Another unreasonable doubt is that Mr. Green Hernandez's high blood sugar would cause the signs of impairment that were observed in this case.

    Green-Hernandez claims these statements were the prosecutor's personal opinion because he expressed how the jurors should view the evidence. We have found that a prosecutor improperly expressed his personal opinion when he stated, "that is my opinion about what this evidence shows." *State v. Case*, 49 Wn.2d 66, 68, 298 P.2d 500 (1956). Conversely, here, the prosecutor did not state that he was expressing an opinion. Rather, the prosecutor attempted to convince the jury of certain conclusions to be drawn from the evidence. In the context of the entire closing argument, after the contested statements, the

9

prosecutor then summarized evidence that supported his theory that no reasonable doubt existed.[9]

b. Expert Witness's Credibility

Green-Hernandez asserts that the State improperly expressed its opinion about Dr. Chicoine when it stated that she "manipulated the medical records," "is a hired doctor who is providing the opinion that she wants to provide," and "was being paid because she came to a conclusion that is not based on the medical records."

Before the prosecutor's rebuttal, the defense's closing arguments focused on Dr. Chicoine's testimony and why the jury should find her credible.[10] The prosecutor's statements about Dr. Chicoine were in response to the defense's closing argument. In addition, the jury instructions stated that the jury was allowed to consider "any personal interest that the witness might have in the outcome or the issues." After the prosecutor mentioned that Dr. Chicoine made $500 an hour, he reminded the jury about this instruction.[11] The prosecutor's

---

[9] Following the first contested statement, the prosecutor continued, "Dr. Chicoine concluded that the Defendant had neuropathy. That was based on a note in his medical records that he had decreased sensation to light touch in his toes on December 27th."

[10] Green-Hernandez's counsel stated, "but you didn't get to hear from another doctor, anyone disputing Dr. Chicoine's testimony. And you might suspect it's not because they couldn't find a doctor anywhere in Seattle, they couldn't find a doctor who would agree with their theory. You can hold that against the State."

[11] The prosecutor stated, "And in the jury instructions, you can consider whether someone has a personal interest that might affect their opinion in a case. Wouldn't you want to know that someone is being paid at an hourly rate to answer the question that's being asked by the Defense?"

comments about Dr. Chicoine's pay were not improper because the comments related to her personal interest.

The jury instructions also stated that the jury can consider "the reasonableness of the witness's statements in the context of all other evidence." The prosecutor's statements that Dr. Chicoine "manipulated the records" and that her conclusion was not based on the record addressed Dr. Chicoine's testimony in the context of all the evidence.

After the prosecutor stated that Dr. Chicoine manipulated the medical records, he talked about the evidence presented during trial. The prosecutor stated that Dr. Chicoine testified that horizontal nystagmus can be caused by alcohol intoxication and can also be caused by medical conditions. The prosecutor then argued that the symptoms of diabetes, as Dr. Chicoine testified, were also symptoms of alcohol intoxication.[12] Evaluating the prosecutor's argument as a whole, he did not assert that Dr. Chicoine was lying. Rather, he was highlighting flaws in Dr. Chicoine's testimony.

<u>Shifting the Burden of Proof</u>

Green-Hernandez asserts that the prosecutor improperly shifted the burden to the defense by repeatedly telling the jury that there was *unreasonable doubt* about the evidence.

Our Supreme Court has held that "it is improper for the prosecutor to argue that the burden of proof rests with the defendant." *Thorgerson*, 172 Wn.2d

---

[12] The prosecutor asserted, "[Dr. Chicoine] said that alcohol can cause a mental – altered mental state. Alcohol can even cause neuropathy."

at 453. Additionally, our court has found that it is improper for a prosecutor to misstate the reasonable doubt standard and impermissibly undermine the presumption of innocence. *Emery*, 174 Wn.2d at 759-60.

Green-Hernandez claims that the prosecutor's statements improperly implied that the defense had to present a reasonable theory. Green-Hernandez claims that by stating that the defense's theory of the case was an "unreasonable doubt," the State shifted the burden by implying that Green-Hernandez had to present a reasonable theory of the case.

Assessing the prosecutor's closing statement in its entirety, the prosecutor stated the correct burden of proof throughout his closing statement.[13] Further, the jury instructions stated that the jury are "the sole judges of the credibility of each witness." Additionally, the instructions state that "lawyers' statements are not evidence" and jurors must disregard statements that are not supported by the evidence or by the law. Although the prosecutor's use of the phrase unreasonable doubt was a poor word choice, his comments, in context, did not rise to the level of a misstatement of the burden of proof and did not mislead the jury.

<u>Impugning Defense Counsel</u>

Green-Hernandez contends that by the prosecutor describing the defense's theory of the case as unreasonable and claiming that the expert

---

[13] In part, the prosecutor stated, the standard is beyond a reasonable doubt, "it is a doubt that would exist in the mind of a reasonable person. It is based upon the evidence or the lack of evidence in this case. It is not speculative or made-up doubt. It's based on something that you would have seen or heard in court."

witness manipulated the medical records, the State impugned Green-Hernandez's counsel.

Our courts have widely held that "it is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." *Thorgerson*, 172 Wn.2d at 451. In *Thorgerson*, our Supreme Court found that the prosecutor improperly impugned defense counsel when the State accused the defense of using " 'sleight of hand' tactics and used disparaging terms like 'bogus' and 'desperation' to describe the defense." 172 Wn.2d at 450. In *State v. Warren*, improper impugnment was also found when the prosecutor described the defense's argument as " 'classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing.' " 165 Wn.2d 17, 29, 195 P.3d 940 (2008).

In his closing statements, the prosecutor did not directly address the defense attorney's role or argument. The prosecutor also did not make disparaging comments regarding Green-Hernandez's counsel. Thus, the prosecutor did not impugn the defense counsel.

<u>Prejudice and Cumulative Error</u>

Green-Hernandez's defense did not object to any of the contested statements on appeal. Therefore, Green-Hernandez must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Since we do not find misconduct, Green-Hernandez was not prejudiced.

Additionally, in the State's rebuttal, defense counsel objected to a statement about Green-Hernandez drinking alcohol and his diabetes. The court gave a curative instruction, stating that the jury should rely on "the notes and the words of the doctor, not what the lawyers are telling you." This curative instruction would also apply to the contested statements on appeal. Green-Hernandez has shown no prejudice.

Green-Hernandez also contends that the prosecutor misconduct was so flagrant, the cumulative prejudice could not have been cured by a jury instruction. Under the cumulative error doctrine, if cumulative errors produce a trial that is fundamentally unfair, a defendant may be entitled to a new trial. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835 (1994). Because we do not find prosecutor misconduct, as detailed *supra*, no cumulative error occurred.

<u>Ineffective Assistance of Counsel</u>

Green-Hernandez asserts that his counsel's failure to object to the prosecutor's statements closing and rebuttal arguments constitute deficient performance.

We review claims of ineffective assistance of counsel under a de novo standard, and it is a mixed question of law and fact. *State v. Backemeyer*, 5 Wn. App. 2d 841, 848, 428 P.3d 366 (2018).

The United States and Washington State Constitutions guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); WASH. CONST. art. I, 22. In an ineffective assistance of counsel claim, the defendant must show that "that

counsel's performance was deficient and that the defendant was prejudiced by the deficient performance." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). A counsel's performance "is deficient if it falls 'below an objective standard of reasonableness.' " *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 688).

During the State's closing argument, Green-Hernandez did not object to any statements. Because we determined that Green-Hernandez was not prejudiced by the statements without an objection, his counsel was not ineffective for his failure to object.[14]

Statement of Additional Grounds for Review

Green-Hernandez asserts that his case should be dismissed, that he should be released immediately, and this court should grant him relief from the conviction and sentence because the State did not pay the required filing fee. Green-Hernandez cites RCW 36.18.020(2)(b) to support his assertion that the State is required to pay a filing fee and file the receipt. RCW 36.18.020(2)(b) states that the clerks of superior courts shall collect fees for: "[a]ny party, except a defendant in a criminal case, filing the first or initial document on an appeal from a court of limited jurisdiction or any party on any civil appeal, shall pay, when the document is filed, a fee of $200." RCW 36.18.020(2)(b) applies to

---

[14] Green-Hernandez asserts that the jury's inquiries during deliberation showed that the prosecutor impacted their view of Dr. Chicoine's credibility and the defense's theory of the case. Although the questions show that the jurors were considering Dr. Chicoine's testimony, it does not show that the jury questioned Dr. Chicoine because of the prosecutor's comments.

filings for appeals.  Here, Green-Hernandez was the first party to file documents on appeal.  Further, this case is not a civil appeal or an appeal from a court of limited jurisdiction.  Even if Green-Hernandez's interpretation of the rule was accurate, he has not provided any authority that dismissal of the case is the appropriate remedy.  We decline to dismiss the case.

We affirm.

_____

WE CONCUR:

_____   _____